## HARTFORD–CONNECTICUT TRUST CO.

v.

## UNITED STATES.

No. 113, Docket No. 22872.

United States Court of Appeals, Second Circuit.

Argued Dec. 16, 1953.

Decided April 26, 1954.

Frank Chapman, Hartford, Conn. (Robinson, Robinson & Cole, Hartford, Conn., of counsel), for plaintiff-appellant.

H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Lee A. Jackson and George F. Lynch, Special Assts. to the Atty. Gen. (Simon S. Cohen, U. S. Atty., and Edward J. Lonergan, Asst. U. S. Atty., Hartford, Conn.), for defendant-appellee.

Before CLARK, FRANK and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

This appeal involves the determination of the Federal Estate Tax on the estate of Elizabeth D. Holland, a nonresident British subject who died in Monte Carlo, Monaco, on February 1, 1948, not then engaged in business in the United States. Her estate included, in addition to assets abroad, bonds of the United States, issued after March 1, 1941, which at the date of death were physically located in the United States.

The Commissioner in part granted a claim for refund based upon the tax exempt status of the government bonds, by excluding the bonds from the "gross estate" as defined by the prefatory paragraph of I.R.C. § 861(a).[1] But in his computation of the allowable deduction for administrative expenses provided by said Section, he included the bonds in the "entire gross estate, wherever situated," which was the denominator of the apportionment fraction prescribed by Sec. 861(a) (1), for application to the deduction specified by I.R.C. § 812(b), 26 U.S.C.A. § 812(b), in the determination of the deduction allowable to such an estate as this. This action resulted in a partial denial of the claim for refund and suit in the court below to recover the amount thus disallowed.

The trial court sustained the action of the Commissioner and granted the government's motion for summary judgment. From that judgment, the decedent's executor took this appeal.

The government contends, and we agree, that Sec. 604(a) of the Revenue Act of 1951, 65 Stat. 452, 26 U.S.C.A. § 861(c), was enacted to amend the law theretofore existing as interpreted by our decision in Jandorf's Estate v. Com'r Int. Rev., 2 Cir., 171 F.2d 464.[2] This was accomplished by the addition to Section 861 of the Code of Paragraph (c) the text of which is set forth in footnote (1). Paragraph (c), thus added to the Code, made it plain that with respect to the estate of a decedent who died prior to 1951 Congress intended that the rule of the Jandorf case should apply. We turn directly to the question whether the Commissioner and the court below correctly applied the Jandorf rule. We think they did.

1. Sec. 861 of the Internal Revenue Code, 26 U.S.C.A. § 861, in so far as applicable to this case, reads as follows:

"§ 861. Net estate

"(a) *Deductions allowed.* For the purpose of the tax the value of the net estate shall be determined, in the case of a nonresident not a citizen of the United States, by deducting from the value of that part of his gross estate (determined as provided in section 811), which at the time of his death is situated in the United States—

"(1) [As amended by Sec. 406(b), Revenue Act of 1942, c. 619, 56 Stat. 798] *Expenses, losses, indebtedness, and taxes.* That proportion of the deductions specified in section 812(b) * * * which the value of such part bears to the value of his entire gross estate, wherever situated.

* * * * *

"(b) *Condition of allowance of deductions.* No deduction shall be allowed in the case of a nonresident not a citizen of the United States unless the executor includes in the return required to be filed under section 864 the value at the time of his death of that part of the gross estate of such nonresident not situated in the United States.

"(c) [As added by Sec. 604(a) of the Revenue Act of 1951, c. 521, 65 Stat. 452.] *United States* bonds. For the purposes of subsection (a), the value of the gross estate (determined as provided in section 811) of a decedent who was not engaged in business in the United States at the time of his death—

"(1) shall not include obligations issued by the United States prior to March 1, 1941; and

"(2) shall include obligations issued by the United States on or after March 1, 1941, but only if the decedent died after the date of the enactment of the Revenue Act of 1951."

2. This case was followed in Claflin v. Com'r Int. Rev., 2 Cir., 186 F.2d 307; Chemical Bank & Trust Co. v. Pedrick, 2 Cir., 185 F.2d 1022; Pennsylvania Co. for Banking & Trusts v. United States, 3 Cir., 185 F.2d 125.

It was implicit in the Jandorf decision that, for purposes of the tax on estates of non-resident aliens not engaged in business in the United States, bonds of the United States issued subsequent to March 1, 1941 should be excluded from the determination of the "gross estate" as defined in the prefatory paragraph of Sec. 861(a). For in that case this court held that the language of the Fourth Liberty Bond Act of 1918, Sec. 3, as amended by Victory Liberty Loan Act of 1919, Sec. 4, 31 U.S.C.A. § 750, whereby such bonds were declared to be " 'exempt both as to principal and interest from any and all taxation now or hereafter imposed by the United States * * * ' " [171 F.2d 465] was intended to accomplish their exemption from the estate tax.

The Commissioner's action, sustained below, recognized the effect of that holding. For the Commissioner excluded the bonds in question from the gross estate as determined by Sec. 811 with the result that they were also excluded from the net estate. There is no dispute as to the rightness of that action.

But when he came to determine the allowable deduction from the net estate thus found, the Commissioner applied to the deduction authorized by Sec. 812(b) a proportion, or fraction, of which the numerator was the value of the assets situated in the United States, exclusive of the bonds in question, and the denominator was the "value of his entire gross estate, wherever situated" inclusive of the bonds in question. As observed above, concededly under the Jandorf rule he was correct in excluding the value of the bonds from the numerator. Also, in including the bonds in the denominator, notwithstanding the appellant's contentions to the contrary, we think he was correct; his action in so doing in no respect ran counter to the Jandorf holding. It is true that the inclusion of the bonds in the denominator had the effect of reducing the deduction which was allowable and hence the indirect effect of somewhat increasing the tax due from the estate. But the result

was in no true sense a tax on the bonds themselves, or on their transfer, as it would have been if they had been includible in the gross estate, and hence in the net estate, contrary to the Jandorf rule. It was merely an incident to the statutory scheme for measuring the deductions allowable to an alien's estate by the proportion between that part of the estate which was situated in the United States and the entire estate wherever situated.

The deduction allowed by the Commissioner was no less than it would have been if the bonds involved had been those of a private corporation. In that event, of course, the bonds would have been included in the denominator. Thus the tax advantage obtained by the exclusion of the government bonds from the gross estate, as that term is used in the prefatory paragraph of Sec. 861 (a), was not destroyed by the inclusion of the bonds in the computation of the allowable deduction for administrative expenses under Sec. 861(a) (1).

The same observation is applicable to an estate having local assets in which the only government bonds, at the time of death, are situated outside the United States. True, such bonds, like those locally situated, by their inclusion in the "entire gross estate" which is the denominator of the apportionment fraction have the effect of reducing the allowable deduction. But since such bonds are excluded from that part of the gross estate which is the basis for computing net estate, their inclusion in the denominator of the apportionment fraction does not deny the exemption accorded to government bonds. Certainly in exempting such bonds and their transfer from taxation it was not intended that they were to have the effect of offsetting or reducing the tax or non-exempt assets physically situated in the United States.

We conclude that nothing in the Victory Liberty Loan Act or in the language or rationale of the Jandorf opinion required any modification of the statutory scheme for the determination of the allowable deductions as would result if the

exempted bonds were excluded from the "entire gross estate, wherever situated."

The appellant points to the fact that the commissioner's action accords to "gross estate" as used in Sec. 861(a) (1) a different quantity from that in the prefatory paragraph of Sec. 861(a). We see no vital inconsistency. In the prefatory paragraph, "gross estate" is used as the basic factor from which the definition of *net estate* is derived: it is there used to show the base figure, which enters into the net estate, from which allowable deductions shall be subtracted. In Sec. 861(a) (1), on the other hand, "gross estate" is used to define not the base figure referred to above but the statutory scheme for determining the allowable deductions—a scheme which applies generally in all cases in which an alien decedent left assets situated in the United States. And the fact that in Section 861(a) (1) the denominator of the fraction was defined not by the words "gross estate" alone but by the phrase "his *entire* gross estate, *wherever situated*" (emphasis added) suggests that the denominator as thus specified was significantly broader than "gross estate" as used in the prefatory paragraph of Section 861.

The absence of an express statutory requirement in the prefatory paragraph for the exclusion of the tax-exempt bonds is doubtless attributable to the fact that when Congress enacted the Internal Revenue Code it apparently failed to appreciate the impact of the Victory Liberty Loan Act as later interpreted by the Jandorf case. If this had been foreseen, doubtless in Sec. 861(a) of the Code "gross estate" would have been defined in some such language as "gross estate (determined as provided in Section 811) *less exempt bonds,* situated in the United States," thus *making sharper contrast* with *"entire* gross estate, *wherever situated"* as the phrase appears in Sec. 861(a) (1). This sharper contrast now appears in Sec. 861 as amended in 1951 by the addition thereto of paragraph (c). By this amendment Congress expressly provided that "For the purposes of subsection (a), the value of the gross estate (determined as provided in section 811) * * * shall not include obligations issued by the United States prior to March 1, 1941". Thus by using the precise language of the prefatory paragraph of Sec. 861(a) it was plainly intended that for *purposes of determining the gross estate* from which administration expenses are deducted, "gross estate" was to be measured exclusive of locally situated government bonds, in contrast to the broader provision of Sec. 861(a) (1), not amended in 1951, which *for purposes of measuring the allowable deduction* defined the denominator of the apportionment fraction as the *"entire* gross estate, wherever situated."

Judgment affirmed.